UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No. 2:22-CR-066-PPS-JPK |
| | ) | |
| MOSES JAVON JONES, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Defendant Moses Javon Jones seeks dismissal of the superseding indictment that charges him with lying on various firearm purchase forms, in violation of 18 U.S.C. §§ 922(a)(6) and 924(a)(1)(A). [DE 26.] According to the indictment, Jones on eight occasions knowingly made false representations regarding his address and being an unlawful user of narcotic drugs. [DE 18.] His main argument for dismissal raises an increasingly common refrain among criminal defendants charged with making false statements in the acquisition of firearms: namely, that the federal statutes criminalizing such lies are "no longer legitimate constitutional criminal regulations," in light of the Supreme Court's ruling in *New York Rifle & Pistol Association v. Bruen*, 142 S. Ct. 2111 (2022). [DE 26 at 2.] But because the Second Amendment does not shield people who lie to firearms dealers when acquiring guns, Jones' motion will be denied.

### Background

On eight occasions between March 4, 2020 and July 10, 2020, Jones is alleged to have executed ATF Form 4473 documents to purchase firearms. [DE 18.] Form 4473

requires a purchaser of a firearm from a licensed firearm dealer to complete a
questionnaire prior to purchase. In support of his motion, Jones has attached a copy of
one of the forms he executed on March 4, 2020, prior to purchasing a handgun from
Cabela's in Hammond. [DE 26-1.] A warning appeared on the top of the form stating:

> **WARNING: You may not receive a firearm if prohibited by Federal or
> State law. The information you provide will be used to determine
> whether you are prohibited from receiving a firearm. Certain violations
> of the Gun Control Act, 18 U.S.C. § 921 et. seq. are punishable by up to
> 10 years imprisonment and/or up to a $250,000 fine.**

*Id.* at 1. Jones allegedly filled out eight Form 4473s, with the same warning language, at
the time of his firearms purchases during the relevant period.

The form asks for the "transferee's/buyer's full name" and "current state of
residence and address." *Id.* Jones listed his address as 212 McKinley Street in Gary,
Indiana, which the government contends was not his true address. The form also
contains a list of "questions," which Jones answered by checking "yes" or "no" in an
accompanying box. *Id.* One of the questions asked whether Jones was "an unlawful user
of, or addicted to, marijuana or any depressant, stimulant, narcotic drug, or any other
controlled substance[.]" *Id.* A warning appeared immediately following the question:
"**Warning: The use or possession of marijuana remains unlawful under federal law
regardless of whether it has been legalized or decriminalized for medicinal or
recreational purposes in the state where you reside.**" *Id.* Jones answered "no" to this
question. The government says this was a lie because Jones was in fact "an unlawful
user of, or addicted to, marijuana." *Id.*

The superseding indictment charges Jones with knowingly making false statements in the acquisition of a firearm, in violation of 18 U.S.C. § 922(a)(6) (Counts 1–8), and making false statements with respect to information required by law to be kept in the records of a federally licensed firearms dealer, in violation of 18 U.S.C. § 924(a)(1)(A) (Counts 9–16). [DE 18.] In each instance, the alleged lies were the same: that Jones falsely listed his residence and address, and he also lied about his unlawful use, or addiction to, marijuana and other narcotic drugs. *Id.*

## Discussion

A defendant can move before trial to dismiss an indictment for failure to state an offense. Fed. R. Crim. P. 12(b)(3)(B)(v). Such a motion can be made on the grounds that the charged offense is based on an unconstitutional statute. *United States v. Holden*, __ F. Supp. 3d __, No. 3:22-CR-030-RLM-MGG, 2022 WL 17103509, at *2 (N.D. Ind. Oct. 31, 2022). That is the principal basis upon which Jones seeks dismissal of the indictment in this case: the indictment must be dismissed because the charges are grounded in statutes that violate his Second Amendment right to bear arms.

Jones raises a litany of arguments for dismissal of the indictment. First and foremost, he argues that the plain text of the Second Amendment protects conduct that forms the basis of his violation of both statutes, because the statutes broadly regulate the means and process required to possess and receive a firearm. In his view, this kind of regulatory paperwork "cannot survive the *Bruen* test." [DE 26 at 2–3.] Put a bit differently, he contends that §§ 922(a)(6) and 924(a)(1)(A) infringe upon his Second

Amendment rights to keep and bear arms by "condition[ing]" his rights based upon "providing information regarding his address, indictment status and whether he is a user or addict of a controlled substance, among other things." *Id.*

Next, he points out that President Biden on October 6, 2022, issued a proclamation pardoning federal felony convictions for some marijuana-related offenses. He argues that this proclamation reflects that the statutes criminalizing making false statements concerning a gun buyer's use of, or addiction to, marijuana or other narcotics run afoul of the nation's history and tradition of firearm regulation. *Id.* at 3. Jones further argues that the proclamation serves as a "pardon and full restoration of [his] civil rights flowing from the pardon," and thus "compels dismissal" of this case, because he cannot be deemed "'an *unlawful* user' of a controlled substance" at the time he completed the Form 4473s. *Id.* at 4 (emphasis added).

Finally, separate and apart from his *Bruen* challenge, Jones asserts that the superseding indictment fails to state an offense as to each count, because the information required on Form 4473 is "far broader and inconsistent with" the firearms chapter of the United States Code, 18 U.S.C. § 921 *et. seq.* [DE 26 at 3–4.] The argument goes that even if Jones did not accurately complete the Form 4473s, his failure to do so cannot establish a violation of §§ 922(a)(6) and 924(a)(1)(A), since the alleged false information he provided is not "material" to the sale or disposition of a firearm. *Id.* at 4. I will now address each of these arguments in turn.

I.    *Bruen* **Challenge**

The Second Amendment states: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. In *District of Columbia v. Heller*, the Supreme Court identified the "core" of the Second Amendment as: "the right of *law-abiding, responsible citizens* to use arms in defense of hearth and home." *Kanter v. Barr*, 919 F.3d 437, 441 (7th Cir. 2019) (emphasis added) (quoting *Heller*, 554 U.S. 570, 634–35 (2008)), *abrogated by Bruen*, 142 S. Ct. 2111 (2022). The Court in *Heller* made clear that "the right secured by the Second Amendment is not unlimited." 554 U.S. at 626. Indeed, the Supreme Court emphasized that "nothing in our opinion should be taken to cast doubt on . . . laws imposing conditions and qualifications on commercial sale of arms." *Id*. at 626–27. To punctuate the point, the Court went on to even say that these kinds of restrictions on the commercial sale of firearms are "presumptively lawful." *Id*. at 627 n.26. A few years later, a plurality of the Court in *McDonald v. City of Chicago* repeated its assurances that *Heller* "did not cast doubt on such longstanding regulatory measures as prohibitions on the possession of firearms by felons." 561 U.S. at 768.

After *Heller*, the Seventh Circuit advanced a two-step test for looking at Second Amendment challenges. *Kanter*, 919 F.3d at 441. The threshold question in this framework was "whether the regulated activity falls within the scope of the Second Amendment." *Id.* (quoting *Ezell v. City of Chicago*, 846 F.3d 888, 892 (7th Cir. 2017)). Then, "if the historical evidence is inconclusive or suggests that the regulated activity is

not categorically unprotected," courts conducted "a second inquiry into the strength of the government's justification for restricting or regulating the exercise of Second Amendment rights." *Id.*

However, in *Bruen*, the Supreme Court held that the two-step approach was "one step too many." *Bruen*, 142 S. Ct. at 2127. *Bruen* involved a New York law making it a crime to possess a firearm without a license, both inside and outside the home. A person could obtain a license for a firearm, but they had to demonstrate a specific need for self-defense. The Court held the Second Amendment protects an individual's right to carry a handgun for self-defense both in the home and outside of the home, and that New York's licensing plan violated the Constitution. When evaluating whether a regulation on Second Amendment rights is constitutional, *Bruen* instructs the courts to use the following standard:

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct.  The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command.

*Id.* at 2129–30. *Bruen* did not address the "longstanding prohibitions on the possession of firearms by felons . . . or laws imposing conditions and qualifications on the commercial sale of arms," which the Court characterized as "presumptively lawful." *Heller*, 544 U.S. at 626, 627 n.26. In other words, the Supreme Court has never held that lying on a firearms transaction report is conduct protected by the Second Amendment. In fact, the understanding of Second Amendment right embraced in *Heller* and

*McDonald*, and left undisturbed by *Bruen*, strongly suggests otherwise. And indeed I can find no case where a federal appeals court has ever found the two operative statutes unconstitutional — whether before *Bruen* or in its wake.

What's more, *Bruen* doesn't even mention a case decided by the Supreme Court well after *Heller* which concerns federal firearms regulations: *Abramski v. United States*, 573 U.S. 169 (2014). *Abramski* dealt with the very statute at issue here: 18 U.S.C. §922(a)(6). The Court in *Abramski* started its analysis by talking about how "[f]ederal law has for over 40 years regulated sales by licensed firearms dealers, principally to prevent guns from falling into the wrong hands." *Id.* at 172. The court then went on to talk about how the firearms "statute establishes a detailed scheme" to regulate a number of things such as the "buyers name, age and place of residence." *Id.* (internal quotations omitted). *Abramski* addressed these commonsense regulations without even mentioning the Second Amendment. *Bruen* doesn't even cite to *Abramski*. Yet Mr. Jones would have me believe that somehow *Bruen* intended to upend the entire "detailed scheme" of federal firearms regulations without saying so. If that's what *Bruen* actually means, I'll let someone else arrive at that conclusion. It sounds dangerous to me.

As previously explained, § 922(a)(6) prohibits an individual from lying about facts "material to the lawfulness of the sale or other disposition of [a] firearm or ammunition under the provisions of [the firearms] chapter" of the United States Criminal Code. Section 924(a)(1)(A) prohibits knowingly making false statements with respect to information required by the firearms chapter of the United States Criminal

Code to be kept in the records of a licensed firearms dealer. The first question in the *Bruen* analysis is whether the plain text of the Second Amendment covers the conduct at issue in these statutes. While the question is presently before the Seventh Circuit, district courts, in the meantime, have largely concluded that the Second Amendment's plain text does not cover the conduct at issue in these statutes. As Judge Moody recently noted in a nearly identical case, "every other court in this district to have considered the question" has concluded that §§ 922(a)(6) and 924(a)(1)(A) do not regulate activity covered by the plain text of the Second Amendment. *United States v. Hulitt*, 2:22-CR-088-JTM, at *4 (N.D. Ind. May 18, 2023) (collecting cases).[1]

In the face of these authorities, Jones asserts that the "material fact requirement" in § 922(a)(6), along with the categories of information required by § 924(a)(1)(A) to be kept in the records of a licensed firearms dealer, reflect that these statutes criminally regulate "the receipt—the possession—of firearms for certain classes of firearm possessors, including those under indictment and users of controlled substances." [DE 26 at 10.] He acknowledges that the conduct at issue (lying) occurs "*before* a firearm transferee receives and takes possession of a firearm," but nevertheless argues that if a transferee knowingly provides false information covered by the statutes, his "possession [of the firearm] is criminalized under § 922(a)(6) and § 924(a)(1)(A)." *Id.*

This line of reasoning falls flat. The statutes at issue do *not* criminalize Jones' firearm *possession* in any way; they criminalize making false statements. To the extent

---

[1] A copy of this opinion and order is reflected on the docket at DE 54.

there is a connection between the conduct prohibited by these laws and Jones' right to keep and bear arms, it is highly tenuous. Again, that's because, as various courts in this district have reasonably concluded, the statutes at issue are "truthful information statutes, . . . not firearms statutes." *United States v. Hill*, No. 1:22-CR-61-HAB, 2023 WL 2809200, at *2 (N.D. Ind. Apr. 6, 2023); *see also United States v. Scheidt*, No. 1:22-CR-059-HAB, 2023 WL 2865349, at *1 (N.D. Ind. Apr. 10, 2023); *United States v. Valentine*, No. 2:20-CR-117-JD, 2023 WL 2571720, at *7 (N.D. Ind. Mar. 20, 2023). Put another way, Jones is not "being prosecuted for possessing a firearm; he's being prosecuted for *lying* in the acquisition of the firearm," *United States v. Campbell*, 2:22-CR-023-PPS, at *8 (N.D. Ind. Mar. 14, 2023).[2] The persuasive weight of lower court authority in this district, while not binding on my decision in this case, supports my conclusion that the statutes at issue do not proscribe conduct covered by the plain text of the Second Amendment, and therefore withstand Jones' constitutional challenge under *Bruen*.

What's more, as stated earlier, as far back as *Heller*, the Court acknowledged that longstanding regulations that impose "conditions and qualifications on the commercial sale of arms" are "presumptively lawful." *Heller*, 554 U.S. at 626–27, n.26. The majority in *Bruen* did not address, and therefore cast no doubt, on this holding. In sharp contrast, the Court took care to clarify that its holding should *not* be construed to cast doubt on the constitutionality of "shall-issue" licensing schemes, which typically "require applicants to undergo a background check or pass a firearms safety course, are

---

[2] A copy of the Court's opinion and order in *Campbell* is reflected on the docket at DE 41.

designed to ensure only that those bearing arms in the jurisdiction are, in fact, 'law-abiding, responsible citizens'" and "contain only 'narrow, objective, and definite standards' guiding licensing officials,'" *Bruen*, 142 S. Ct. at 2138 n.9. The disclosure requirements imposed by §§ 922(a)(6) and 924(a)(1)(A) are analogous to "shall-issue" licensing regimes. The requirements not to lie about information material to the lawfulness of a firearm transfer similarly ensure that individuals possessing guns are law-abiding citizens.

*Bruen* did not directly address the propriety of federal prohibitions on making false statements in the acquisition of firearms, to be sure. But given this important caveat in the majority opinion, it appears unlikely that the Court intended to undermine its pronouncement in *Heller* that licensing restrictions on the commercial sale of firearms, imposed prerequisite to an individual's possession of firearms, are "presumptively lawful" – even to the extent they impose "conditions and qualifications" on the acquisition of firearms. *Cf. Valentine*, 2023 WL 2571720, at *9 ("If certain individuals or groups can be prohibited from acquiring and possessing firearms, as is recognized under the Second Amendment, then there must be a constitutionally permissible method of screening those individuals from all prospective gun buyers.").

Jones cites contrary authority in this district, *see United States v. Holden*, No. 3:22-CR-030-RLM, 2022 WL 17103509 (N.D. Ind. Oct. 31, 2022),[3] but reliance on *Holden* is

---

[3] The Seventh Circuit recently reversed the district court's order in *Holden. See United States v. Holden*, __ F.4th __, 2023 WL 4039607 (7th Cir. June 16, 2023). The Court's opinion and order was prepared prior to the entry of the Seventh Circuit's decision, so I will take up the arguments presented in the parties' briefs. In any case, *Holden* does not support Defendant's position in this case.

perplexing. In *Holden*, Judge Miller found that § 922(n), which prohibits the receipt of a firearm by a person under felony indictment, was not consistent with the nation's history and tradition of firearm regulation. Nothing in *Holden* undermines my conclusion that the statutes at issue here do not cover conduct implicated by the plain text of the Second Amendment.

Initially, *Holden* did not address the information Jones allegedly lied about (his address and drug use). Rather, Judge Miller found that § 922(n) burdened activity protected by the Second Amendment (possessing a gun while under indictment), and the government failed to demonstrate the regulation was consistent with the history and tradition of firearm regulation that delimits the individual rights protected by the Second Amendment. *Id.* at *5. Holden's lie about his indictment status was therefore "immaterial because under no circumstances could it affect the lawfulness of the sale." *Id.* at *6. Judge Miller did *not* conclude that lying about an individual's address or drug use on Form 4473 constitutes conduct covered by the Second Amendment or that § 922(a)(6) was unconstitutional. The court concluded that the indictment failed to state an offense against Holden because § 922(n) was unconstitutional, meaning Holden's false statement "didn't concern a fact material to the lawfulness of the firearm sale." *Id.* at *7. Moreover, *Holden* does not extend to § 924(a)(1)(A), which does not require a misstatement be "material," unlike § 922(a)(6). In fact, Judge Miller recognized that a violation of § 924(a)(1)(A) involves conduct distinct from that prohibited by § 922(a)(6).

*See id.* at *6 (noting false statements covered by § 924(a)(1)(A) are "a potentially broader class of statements than the statements that are regulated by § 922(a)(6)").

Jones also relies upon an out-of-circuit decision, *United States v. Connelly*, __ F. Supp. 3d __, 2023 WL 2806324 (W.D. Tex. Apr. 6, 2023),[4] in which the district court granted the dismissal of an indictment charging the defendant with possession of a firearm by an unlawful user of a controlled substance, in violation of 18 U.S.C. § 922(g)(3), and transferring a firearm and ammunition to an unlawful user of a controlled substance, in violation of 18 U.S.C. § 922(d)(3). Jones argues that this case helps his cause because the basis for the indictment in *Connelly* was the defendant's consumption of marijuana, and the district court found that the challenged statutes ran afoul of the Second Amendment in light of *Bruen*. But this case is of limited value to Jones, since it does not address the statutes he stands accused of violating or a meaningfully analogous statute. Jones is accused of lying, not possessing or transferring a firearm. *See Scheidt*, 2023 WL 2865349, at *3 (finding *Connelly* unpersuasive because defendant's "right to bear arms is not addressed, much less infringed" by § 922(a)(6), unlike the firearms statutes at issue in *Connelly*); *Valentine*, 2023 WL 2571720, at *7 ("Section 922(a)(6) does not create a substantive restriction on who may possess a firearm. . . . [T]he conduct which this section regulates is lying to the federal government about material facts during the course of firearms transactions."). Indeed, another district court in the Western District of Texas earlier this year evaluated a direct

---

[4] A copy of this opinion and order is reflected on the docket at DE 47.

challenge to § 922(a)(6), and concluded that "overwhelming authority" from the Fifth Circuit and Supreme Court favored upholding the constitutionality of the prohibition on lying about information material to the lawfulness of the sale of a firearm. *United States v. Soto*, No. SA-22-CR-302-JKP, 2023 WL 1087886, at *6 (W.D. Tex. Jan. 27, 2023).[5]

Jones also points me to the case *Fraser v. ATF*, No. 3:22-CV-410 (E.D. Va. May 10, 2023),[6] in which the district court concluded that 18 U.S.C. § 922(a)(5) and accompanying regulations restricting firearms sales to persons under 21 years-old, but at least 18 years-old, violated the Second Amendment under *Bruen*. Attempting to transpose the court's analysis of § 922(a)(5) to the present case strikes me as more than a bit of a stretch. It is enough to say that the district court's analysis is of limited persuasive value to Jones' cause, insofar as it does not in any meaningful way address the statutes at issue in this case.

Finally, Jones' *Bruen* challenge also appears to attack the constitutionality of other, related federal laws that prohibit an individual from *receiving* a firearm from a licensed dealer. While somewhat difficult to parse, the thrust of these arguments is that, under the Second Amendment, Jones had a right to lie on the firearms acquisition forms he submitted to various dealers, because otherwise he would have been prohibited

---

[5] In all events, I disagree with *Connelly* and find more persuasive decisions of lower courts in this circuit, which have concluded that laws prohibiting a user or addict of controlled substances from possessing or receiving a firearm are constitutional in light of *Bruen*. *See United States v. Posey*, No. 2:22-CR-083-JD, 2023 WL 1869095 (N.D. Ind. Feb. 9, 2023) (denying *Bruen* challenge to § 922(g)(3)); *United States v. Seiwert*, No. 20-CR-443-RWG, 2022 WL 4534605, *2 (N.D. Ill. Sept. 28, 2022) (same).

[6] A copy of this opinion and order is reflected on the docket at DE 53.

from receiving a firearm under 18 U.S.C. § 922(n) (a law he claims is unconstitutional in light of *Bruen*). These arguments provide no defense to his indictment under §§ 922(a)(6) and 924(a)(1)(A). Jones obtained the firearms he sought and would have been denied had he truthfully answered the questions on the Form 4473s. He is accused of lying on the questionnaire that made his receipt of firearms possible, not an unlawful transfer of the underlying firearms he ultimately possessed. In short, the constitutionality of other provisions of law that would prohibit him from receiving firearms, had he *truthfully* answered the questions on the firearms acquisition forms, is "legally irrelevant" to the charges he seeks to dismiss. *See Bryson v. United States*, 396 U.S. 64, 68 (1969).

Another reason these arguments must fail is the position espoused by the government: Jones did not have a right to lie on the firearms application. [DE 39 at 5–7.] An individual, like Jones, who has allegedly "furnishe[d] false information to the Government in feigned compliance with a statutory requirement cannot defend against prosecution for his fraud by challenging the validity of the requirement itself." *United States v. Knox*, 396 U.S. 77, 79 (1969); *see also Bryson*, 396 U.S. at 72 ("[I]t cannot be thought that as a general principle of law a citizen has a privilege to answer fraudulently a question that the Government should not have asked."). A defendant who lies "as a means of self-help may not escape the consequences by urging that his conduct be excused because the statute which he sought to evade is unconstitutional." *Dennis v. United States*, 384 U.S. 855, 867 (1966) (holding defendants could not raise

14

constitutional challenge to convictions for lying about communist party membership on government form); *see also Bryson*, 396 U.S. at 65 & n.1 (affirming conviction of defendant who lied about concealing communist party membership as a "material fact," in violation of 18 U.S.C. § 1101); *United States v. Lawton*, 366 F.3d 550, 553–54 (7th Cir. 2004) (argument that defendant may not be penalized under § 922(a)(1) for lying about indictment status on firearms acquisition forms because "the government cannot constitutionally prohibit a person facing felony criminal charges from receiving or transporting a firearm [under 18 U.S.C. § 922(n)]," was "dubious," in light of Supreme Court's repeated admonitions that "an individual may be prosecuted for knowingly making a false statement on a matter within the jurisdiction of the government, even if there are doubts about the government's authority to pose the inquiry giving rise to that statement").

Numerous precedents indicate that the prohibition on lying applies regardless of the statute or constitutional provision at issue. *See Kay v. United States*, 303 U.S. 1, 6 (1938) (declining to review claim that Congress lacked constitutional authority to enact the Home Owners' Loan Act of 1933 raised by defendants who made false statements in violation of the act); *United States v. Moore*, 446 F.3d 671, 682 (7th Cir. 2006) (declining to decide if HUD regulation was unconstitutionally vague where defendant intentionally failed to disclose information); *Lawton*, 366 F.3d at 553-54. Jones cannot knowingly answer the question on the firearms dealer form falsely, and then after he is caught making a material misrepresentation, raise a constitutional challenge "to the propriety

of the very question." *Dennis*, 384 U.S. at 867. Instead, if he wanted to challenge the constitutionality of the question being asked of him, he should have filed a civil suit invoking federal question jurisdiction. *See, e.g., Kanter*, 919 F.3d at 440 (felon challenging federal and state statutes prohibiting him from owning a firearm brought suit in district court challenging the constitutionality of the statutes).

In sum, because the plain text of the Second Amendment does not cover conduct proscribed by 18 U.S.C. §§ 922(a)(6) and 924(a)(1)(A), Jones' constitutional challenge fails at step one of the *Bruen* framework. I therefore decline to play armchair historian and evaluate whether these statutes are consistent with the nation's historical tradition of firearms regulation.

## II.     Presidential Pardon

Jones further asserts that his alleged use of marijuana is subject to a presidential pardon, and that means he did not lie when he certified on the firearm acquisition forms that he was not an "unlawful user" of marijuana. In October 2022, President Biden issued a proclamation pardoning individuals who committed the offense of simple possession of marijuana. 87 Fed. Reg. 61441 (Oct. 12, 2022). The chief executive's stated intention in issuing this pardon was "to pardon only the offense of simple possession of marijuana in violation of Federal law or in violation of [the D.C. Code], and not any other offenses related to marijuana or other controlled substances. No language herein shall be construed to pardon any person for any other offense." *Id.* The pardon thus has no application to Jones' case, as the pardon is explicitly limited to

simple possession of marijuana and not the separate perjury crimes of which Jones stands accused. Several courts in this circuit have arrived at the same conclusion in evaluating identical arguments. *Hulitt*, 2:22-CR-088-JTM, at *9; *Scheidt*, 2023 WL 2865349, at *2 n.3; *Posey*, 2023 WL 1869095, at *4. I find their reasoning persuasive and applicable in this case.

Moreover, Jones' argument that the pardon has retroactive effect on his alleged unlawful use of marijuana at the time he filled out the firearm acquisition forms runs headlong into settled circuit authority. *Hirschberg v. C.F.T.C.*, 414 F.3d 679, 682 (7th Cir. 2005); *Bjerkan v. United States*, 529 F.2d 125, 128 n.2 (7th Cir. 1975) (noting a pardon "does not 'blot out guilt' nor does it restore the offender to a state of innocence in the eye of the law," but rather "removes all legal punishment *for the offense*" pardoned (emphasis added)). Jones is correct that the presidential pardon serves to "restor[e] [his] civil rights flowing from the pardon." [DE 26 at 4.] But the rights that flow from the pardon are not without limitation; indeed, they are expressly limited to punishment for the offense of simple possession of marijuana prior to October 12, 2022. While Jones may not be punished for marijuana possession under federal law, the fact of his alleged unlawful use of marijuana at the time he certified he was not an unlawful user of marijuana on the Form 4473s may be considered as a basis for his violations of the statutes at issue in this case.

Finally, Jones has presented no authority for the proposition that because marijuana possession is "logically essential" to the use of marijuana [DE 26 at 15], he

had free reign to lie about not being an unlawful user of marijuana at the time he completed the firearm acquisition forms. It is simply not true that "the government is attempting to criminalize [his] marijuana possession." *Id.* What is at issue in this case is whether Jones lied when he said he was not an unlawful user of marijuana *at the time* he submitted the required forms to obtain firearms. For the foregoing reasons, the presidential pardon provides no basis for dismissal of the indictment against him.

### III.    Materiality of Form 4473 Questions

Jones' last set of arguments for dismissal of the superseding indictment challenges the materiality of the false statements he allegedly provided on the Form 4473s. "[A]n indictment must state each element of the crimes charged, provide the defendant with adequate notice of the nature of the charges so that [he] may prepare a defense, and allow the defendant to raise the judgment as a bar to future prosecutions for the same offense." *United States v. Nayak*, 769 F.3d 978, 979 (7th Cir. 2014) (citing *United States v. Castaldi*, 547 F.3d 699, 703 (7th Cir. 2008)). To determine whether the indictment states an offense, I review the government's allegations and evaluate whether the facts alleged, if true, form a violation of federal law. *Id.*; *United States v. Moore*, 563 F.3d 583, 586 (7th Cir. 2009). In setting forth the offense, it is generally acceptable for the indictment to "track" the words of the statute itself, so long as those words expressly set forth all the elements necessary to constitute the offense intended to be punished. *See United States v. Hinkle*, 637 F.2d 1154, 1157 (7th Cir. 1981).

The crux of Jones' argument is that the indictment fails to state an offense as to any count because his address and status as a user or addict of marijuana or other narcotic drugs, as the transferee of firearms, was not material information under the firearms chapter of the United States Criminal Code, Title 18, Chapter 44. To make his case, Jones dives headlong into the labyrinthine statutory scheme Congress established in Title 18, Chapter 44. Under 18 U.S.C. § 923 *et seq.*, Congress codified application and licensing requirements for importers, manufacturers, and dealers of firearms and ammunition. Section 923(c) provides that upon filing a proper application and payment of a fee, the Attorney General shall issue qualified applicants a license to receive firearms and ammunition in interstate commerce. Section 923(g)(1) states that a "licensed dealer shall maintain such records of . . . receipt, sale, or other disposition of firearms at his place of business for such period, and in such form as the Attorney General may by regulations prescribe." Jones contends that, to the extent the questions about his address and drug use on Form 4473 have been promulgated pursuant to this statutory grant of authority to the Attorney General, the questionnaire "expands criminal liability beyond the statutory information requirements" in the firearms chapter. [DE 26 at 16.]

First, he asserts that providing a non-current residential address is not material information under the firearms chapter, so his false statement on the questionnaire cannot form a basis for his guilt under §§ 922(a)(6) and 924(a)(1)(A). Under 18 U.S.C. § 922(b)(5), a firearms dealer is obligated to record a prospective purchaser's "name,

age, and place of residence[.]" Acknowledging this explicit requirement for dealers to obtain, record, and keep a purchaser's "place of residence" prior to any firearm transfer, Jones then points me to 18 U.S.C. § 922(t). He claims (without citing any legal authority) that § 922(t) contains "the *material information* related to the means of identification of the buyer or transferee." [DE 26 at 16 (emphasis added).] Section 922(t) provides specific requirements for licensed firearms dealers to conduct background checks pursuant to § 103(d) of the Brady Handgun Violence Prevention Act. In relevant part, § 922(t)(1)(D) states that a dealer shall not transfer a firearm to any other person who is not licensed under the firearms chapter, unless "the transferor has verified the identity of the transferee by examining a valid identification document [as defined in 18 U.S.C. § 1028(d)] of the transferee containing a photograph of the transferee." Section 1028(d)(3) defines "identification document" to encompass a document made or issued by the authority of the United States government, a state, or a subdivision of a state, but says nothing about an individual's current place of residence, unlike § 922(b)(5). Thus, Jones asserts that lying about his residence on Form 4473 is not material to whether he violated the statutes at issue, because no federal statute expressly requires a transferee's current place of residence "as a transferee requirement or as a necessary condition precedent for firearm possession."

Frankly, whatever superficial appeal this argument may have, it flies in the face of settled authority issued by numerous Courts of Appeals, including the Seventh Circuit. In *United States v. Queen*, the Seventh Circuit held in no uncertain terms that

listing a false street address on an ATF 4473 form is "a material misrepresentation that

violates § 922(a)(6)." 408 F.3d 337, 339 (7th Cir. 2005). In full, the Seventh Circuit stated:

> We reject Queen's argument that gun buyers may lie about a street
> address so long as they live within the state where the gun is sold. Section
> 922(a)(6) requires a buyer to provide truthful information to a dealer
> about any fact material to the lawfulness of a firearm sale. 18 U.S.C.
> § 922(a)(6). Section 922(b)(5) of Title 18 in turn requires the dealer to
> record the buyer's place of residence, thus making a firearm sale by a gun
> dealer illegal unless the dealer notes the buyer's "place of residence" in
> records the dealer is required to maintain. Lastly, the Gun Control Act's
> implementing regulations require that a dealer record the buyer's
> "residence address (including county or similar political subdivision)" on
> Form 4473, which specifically asks for "No., Street, City, County, State,
> [and] ZIP Code." 27 C.F.R. § 478.124; ATF Form 4473. A false street
> address is therefore material to the lawfulness of the sale because, when
> the seller falsely represents his address on the form, the dealer fails to
> record the buyer's address, in violation of § 922(b)(5).

*Id.* (internal citations omitted).

In affirming the district court's denial of Queen's motion to dismiss the

indictment, the court noted that "every court to address the issue ha[d] rejected Queen's

position." *Id.* at 338. The court further noted this rule is in line with authority from the

First, Fourth, Fifth, and Ninth Circuit Courts of Appeals. *Id.* at 339 (collecting cases).

Nine years later, the Seventh Circuit clarified its holding in *Queen* "recognized that a

false address was material in that case, and that it was sufficient to support an

indictment [for an offense under § 922(a)(6)] irrespective of the state of residence of the

buyer," but did not go "so far as to declare that providing a false address, in every case,

is material as a matter of law." *United States v. Bowling*, 770 F.3d 1168, 1177 (7th Cir.

2014). Notwithstanding the court's clarification in *Bowling*, the facts of the case before

me are substantially the same as those alleged in *Queen* (*i.e.*, the only difference is that Jones here is also charged with lying about his use of or addiction to controlled substances). Thus, I find the Seventh Circuit's reasoning forecloses Jones' argument as to the materiality of the Form 4473 question regarding his state and address of residence. Moreover, although the government raised these authorities in its response brief [DE 39 at 3–4], Jones did not mention them in his reply [DE 40]. There is no basis in the record before me on which to conclude the Court's ruling in *Bruen* abrogated *Queen*'s holding as to the materiality of the address question on Form 4473, and I decline to do so *sua sponte*.

Second, Jones contends that his alleged misrepresentation regarding marijuana use is not "material" to whether he may possess a firearm, nor information "required" to be kept in the records of a licensed firearms dealer. His motion made quick work of this argument, briefly analogizing the question about marijuana use to the question about indictment status in *Holden*, and asserting that his use of marijuana "no longer renders him an unlawful user of a controlled substance" in light of the presidential pardon for marijuana possession offenses. [DE 26 at 17.] I have already rejected the presidential pardon as a basis for dismissal of the indictment, so the question is whether lying about being an "unlawful user" of marijuana or other narcotics is "material" information under the firearms chapter or "required" to be kept in the records of a licensed firearms dealer.

On first glance, whether a misrepresentation regarding a defendant's "unlawful use" of marijuana is material strikes me as a closer question than the materiality of an individual's address information or whether he or she is currently under indictment. A person's address and indictment status is pretty black and white. But whether someone is an "unlawful user of, or addicted to" marijuana is not so clear. I think perfectly well-meaning people could have genuine confusion on how to answer the question, mistakenly answer "no," and then find themselves caught in the cross hairs of a federal indictment, despite answering the question in good faith. Rather than effectuating the safe and secure transfer of firearms, the question could trap unsuspecting and well-meaning folks.

Consider, on one hand, someone who smoked pot with her friends around the campfire two months before walking into a gun store and filling out a Form 4473. Is she an "unlawful user" of marijuana? Are all recreational uses of marijuana, even where authorized under state law, "unlawful" in light of the federal Controlled Substances Act? What if, instead of smoking on one occasion earlier in the month, she used marijuana most evenings for the purpose of relieving pain or stress, as one might do with prescription drugs? What if she was prescribed marijuana pursuant to state law authorizing medicinal marijuana consumption? In short, when does an individual cross the line to "unlawful use" or "addiction to" marijuana, obligating him or her to truthfully answer "yes" to this question on Form 4473 in the process of buying a gun? It's not immediately clear to me how one should answer, looking at the language on the

questionnaire, standing alone. And that's really all a prospective purchaser has to go on when they walk into a store and attempt to accurately answer the question presented.

The government, for its part, directs my attention to cases rejecting constitutional vagueness challenges to the Form 4473 "user" question, *United States v. Berry*, 60 F.3d 288, 292–93 (7th Cir. 1995) (rejecting challenge to Form 4473 "user" question as unconstitutionally vague where illegal use of drugs by defendant and submission of ATF 4473 forms were "contemporary events"); *United States v. Holley*, 526 F. App'x 743, 745 (9th Cir. 2013) (concluding lie about drug use on Form 4473 was material misstatement), as well as more recent authority rejecting a constitutional vagueness challenge to the statutory prohibition on users of controlled substances possessing or transferring firearms, *United States v. Cook*, 970 F.3d 866, 872–78 (7th Cir. 2020). [DE 39 at 4.] Jones' reply brief did not address any of these authorities, let alone mention the term "marijuana." [*See* DE 40.] Perhaps due to a lack of clarity in the parties' briefing on this issue, it was addressed at length at the hearing on Jones' motion, and I permitted the parties to submit supplemental briefs addressing the definition of "unlawful user" under the firearms chapter. [DE 51; DE 52.]

The firearms chapter provides that it is unlawful for any person "who is an unlawful user of or addicted to any controlled substance (as defined in section 102 of the Controlled Substances Act, 21 U.S.C. § 802)" to possess or receive a firearm in interstate commerce. 18 U.S.C. § 922(g)(3). Section 802(1) defines "addict" to mean an individual who "habitually uses any narcotic drug so as to endanger the public morals,

health, safety, or welfare, or who is so far addicted to the use of narcotic drugs as to have lost the power of self-control with reference to his addiction." Section 801 contains no definition of "unlawful user." It does contain a definition of "ultimate user," but that is not applicable here. 21 U.S.C. § 802(27). A separate definition of "unlawful user," for purposes of Title 18, Chapter 44, appears in the Code of Federal Regulations, 27 C.F.R. § 478.11. It provides in full:

> *Unlawful user of or addicted to any controlled substance.* A person who uses a controlled substance and has lost the power of self-control with reference to the use of controlled substance; and *any person who is a current user of a controlled substance in a manner other than as prescribed by a licensed physician.* Such use is *not limited to the use of drugs on a particular day, or within a matter of days or weeks before, but rather that the unlawful use has occurred recently enough to indicate that the individual is actively engaged in such conduct.* A person *may be an unlawful current user of a controlled substance even though the substance is not being used at the precise time the person seeks to acquire a firearm or receives or possesses a firearm. An inference of current use may be drawn from evidence of a recent use or possession of a controlled substance or a pattern of use or possession that reasonably covers the present time,* e.g., a conviction for use or possession of a controlled substance within the past year; multiple arrests for such offenses within the past 5 years if the most recent arrest occurred within the past year; or persons found through a drug test to use a controlled substance unlawfully, provided that the test was administered within the past year. For a current or former member of the Armed Forces, an inference of current use may be drawn from recent disciplinary or other administrative action based on confirmed drug use, e.g., court-martial conviction, nonjudicial punishment, or an administrative discharge based on drug use or drug rehabilitation failure.

*Id.* (emphasis added). That said, § 922(g)(3) of the firearms chapter makes no reference to regulatory definitions that the Attorney General may promulgate, but rather points directly to the (non-existent) statutory definition of "unlawful user" in 21 U.S.C. § 801.

Jones argues that the Controlled Substances Act provides a controlling definition of *both* "unlawful user" and "addict," because the statutory definition distinguishes between those who "habitually use any narcotic drug so as to endanger the public morals, health, safety or welfare," on one hand (*i.e.*, a "user"), and those who are "so far addicted to the use of narcotic drugs as to have lost the power of self-control with reference to his addiction," on the other (*i.e.*, an "addict"). [DE 52 at 4–5.] He further asserts that this definition "is the baseline statutory criteria of use the Court should work from in determining what the firearm chapter requires and what is material" to the charged offenses. *Id.* at 5. This interpretation strikes me as unsatisfactory, however, because the Controlled Substances Act specifically defines the term "addict" to encompass both sub-categories of drug users, while it remains silent on what it means to be an "unlawful user" – all of which suggests there is no controlling statutory definition for the phrase.

The government contends that whether Jones is actually an unlawful user of marijuana is "a factual question reserved for the jury"; and for present purposes, the indictment properly alleges his false statement on Form 4473 that he was not an "unlawful user" of marijuana at the time is sufficient to state an offense under §§ 922(a)(6) and 924(a)(1)(A). [DE 51 at 4.] While the firearms chapter does not supply a clear definition of "unlawful user" (as outlined above), the government argues that in the event the case goes to trial, it would be appropriate to use a definition adopted by courts in similar cases, and imported from the regulatory definition cited above. This

standard, the government argues, will provide a clear and manageable standard for the jury to make the ultimate determination whether Jones was an unlawful user of marijuana or other narcotics. *Id.*

After reviewing the parties' supplemental briefs and the underlying case authorities, I agree that "unlawful user" is adequately defined in the Code of Federal Regulations, that courts have applied this definition in analogous cases, and that a misrepresentation as to Jones' use of marijuana or other narcotic drugs under this standard is "material" for purposes of the charged offenses.

*United States v. Posey*, a recent decision from this district, is a good guidepost. *See* 2023 WL 1869095, at *6–7.[7] There, Ms. Posey was charged with possessing a gun while an unlawful user of or addicted to a controlled substance, in violation of 18 U.S.C. § 922(g)(3). She challenged the indictment under *Bruen* and separately raised a vagueness defense to the charges. *Id.* at *6. Her argument paralleled Jones' argument in this case: she asserted that the term "user" for purposes of § 922(g)(3) was not defined in the firearms chapter and therefore was too vague to pass muster as a "well-defined or reasonable restriction on firearm possession[,] as *Bruen* demands." *Id.* Judge DeGuilio rejected this argument based on the regulatory definition outlined above, 27 C.F.R. § 478.11. This conclusion had root in the Seventh Circuit's rejection of a similar vagueness challenge in *United States v. Cook*, which as previously noted the government

---

[7] The district court in *United States v. Siewart*, another case charged under § 922(g)(3), followed the same approach. *See* No. 20 CR 443, 2022 WL 4534605, at *2 & n.2 (N.D. Ill. Sept. 28, 2022).

cited in support of its original opposition to Jones' motion. *See id.* at *7 (citing 970 F.3d at 874). Under these authorities, Judge DeGuilio noted that "user" means "one who regularly or habitually ingests a controlled substance in a manner other than prescribed by a physician." *Id.* (internal citations omitted). Nothing in *Bruen* suggested that *Cook*'s construction of the phrase, in light of the regulatory definition, was improper, so the court had "no reason to doubt" that *Cook*'s construction of a drug "user" for purposes of the firearms chapter "was sufficiently well defined to pass constitutional muster." *Id.*

Jones tells me that these authorities improperly imported the regulatory definition of "unlawful user" because "the text of the challenged statutes directed consideration of a single source, the Controlled Substances Act," and thus "cannot be reconciled with the firearm chapter's and § 922(g)(3)'s plain text." [DE 52 at 5.] Further, he tells me that applying the regulatory definition "is impracticable" because unlawful use is defined to include the use of drugs "within a matter of days or weeks before" the conduct at issue, as well as use that has occurred recently enough to indicate an individual is "actively engaged" in drug use. *Id.* at 5–6 (quoting 27 C.F.R. § 478.11). Despite my initial skepticism about the confusing nature of the statutory definition of "unlawful user" for purposes of the firearms chapter, it seems clear that a reasonable and well-defined meaning of the term has been adopted in this circuit since *Cook* – that is, an unlawful user is someone who "regularly or habitually ingests a controlled substance in a manner other than prescribed by a physician." I agree with Judge DeGuilio that nothing in *Bruen* suggests the Court intended to "overturn the entire

statutory construction apple cart" by requiring that Second Amendment restrictions be "reasonable" and "well-defined." *Posey*, 2023 WL 1869095, at *7.

All told, this debate over the propriety of importing the regulatory definition promulgated by the Attorney General strikes me as a fight about form over substance. Boiled to its essence, the statutes at issue tell Jones not to tell a material lie when he is acquiring a gun. What is material is determined by the Attorney General through regulation. If this case goes to trial, a manageable standard exists by which a jury may determine Jones knowingly lied about his status as an "unlawful user" of marijuana or other narcotic drugs under the standard adopted by the Seventh Circuit in *Cook*. As the government acknowledged at the motion hearing, Form 4473 could provide further clarity about what type of drug use constitutes "unlawful use." But the fact that numerous courts in this circuit have determined that a clear definition of the phrase has been promulgated by the Attorney General, and applies notwithstanding *Bruen*'s construction of the Second Amendment, persuades me that the indictment properly alleges Jones violated 18 U.S.C. §§ 922(a)(6) and 924(a)(1)(A) when he certified on the firearm acquisition forms that he was not an unlawful user of marijuana or other narcotic drugs.

In sum, for the foregoing reasons, the indictment states an offense as to each count based on Jones' alleged material misrepresentations regarding his address of residence and his status as an unlawful user or addict of marijuana or other narcotics.

## Conclusion

For the reasons explained above, Jones' Motion to Dismiss arguing 18 U.S.C.

§§ 922(a)(6) and 924(a)(1)(A) are unconstitutional in light of *Bruen*, and that the

indictment fails to state an offense as to Counts 1–16 [DE 26], is **DENIED**.

**SO ORDERED**.

ENTERED: June 21, 2023.

 /s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT

30